RAYMOND R. ABRAMSON, Judge
A Miller County jury convicted Thomas Leaks of possession of less than two grams of methamphetamine, a Class D felony. He was sentenced as a habitual offender to 15 years' imprisonment in the Arkansas Department of Correction. In this no-merit appeal, Leaks's appellate attorney has filed a brief pursuant to Anders v. California , 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and Arkansas Supreme Court Rule 4-3(k)(1) (2017), seeking to withdraw as counsel on the basis that there is no merit to an appeal.
On March 5, 2018, Leaks filed pro se points pursuant to Rule 4-3(k)(2) alleging that the State's crime-lab expert was uncertain about whether he possessed ecstasy or methamphetamine; that the Texarkana police officer "lied" about how much he had paid for the drugs to "defile [his] character"; that his counsel was ineffective for failing to object to his being charged with possessing methamphetamine instead of ecstasy; and that his counsel was ineffective for allowing him to testify. The State filed a brief in response to Leaks's pro se points as required by Rule 4-3(k)(3).
On March 30, 2016, Texarkana police officer Chase Dixon initiated a traffic stop on Leaks's vehicle after Dixon saw a bag being dropped out of the driver's side of the car. The bag contained what Dixon believed to be ecstasy pills.[1] The dash-cam video that recorded the stop was introduced without objection.
Leaks was arrested, and he admitted that the pills were his and that they did not belong to the two other occupants of the vehicle. Leaks testified that he had bought the pills the day before "[c]ause it was my birthday, and I was trying to party.... [A]nd I was trying to kick it, because I had just got out of jail two weeks before that, and I wasn't even on papers, then two weeks later was my birthday, so I was trying to have a good time." While on the stand, Leaks was also questioned about his prior criminal history, which included seven prior felony convictions. Leaks stated that he was tired of the lifestyle of "popping pills" and asked the jury for forgiveness.
At the conclusion of the State's case, Leaks's counsel moved for a directed verdict on the basis that there was no proof presented that the crime was committed in Texarkana, Arkansas, or Miller County, and that the State had not met its burden.
*770 The circuit court denied the motion. Leaks testified on his own behalf and then renewed his motion for directed verdict, which was again denied by the circuit court. The jury convicted Leaks of possession of a controlled substance. This no-merit appeal followed.
A request to withdraw on the ground that the appeal is wholly without merit shall be accompanied by a brief including an abstract and addendum. Ark. Sup. Ct. R. 4-3(k)(1). The brief shall contain an argument section that consists of a list of all rulings adverse to the defendant made by the circuit court on all objections, motions, and requests made by either party with an explanation as to why each adverse ruling is not a meritorious ground for reversal. Eads v. State , 74 Ark. App. 363, 47 S.W.3d 918 (2001). This framework ensures that indigents are afforded their constitutional rights. Campbell v. State , 74 Ark. App. 277, 47 S.W.3d 915 (2001). In furtherance of the goal of protecting these constitutional rights, it is the duty of both counsel and this court to perform a full examination of the proceedings as a whole to decide if an appeal would be wholly frivolous. Id.
A motion for a directed verdict is a challenge to the sufficiency of the evidence. Hinton v. State , 2015 Ark. 479, 477 S.W.3d 517. In Leaks's motion for directed verdict, he argued that there was no proof that the crime charged occurred in Texarkana, Arkansas. In his brief, Leaks's counsel explains that the "State is not required to prove jurisdiction or venue unless evidence is admitted that affirmatively shows that the court lacks jurisdiction or venue." See Lindsey v. State , 54 Ark. App. 266, 925 S.W.2d 441 (1996). There is a presumption that venue is proper; accordingly, we agree that this adverse ruling provides no meritorious ground for appeal. Leaks's counsel also discusses the "second prong" of his motion for directed verdict that the "state didn't meet its burden" and properly addresses, as required by Rule 4-3(k), the reasons the adverse ruling provided no meritorious grounds for appeal.
The final unfavorable rulings that Leaks's counsel identifies in his brief all involve Leaks's testimony at trial and questions that the State asked on cross-examination. We review evidentiary rulings regarding the admissibility of evidence under an abuse-of-discretion standard, and we do not reverse absent a manifest abuse of that discretion and a showing of prejudice. Mendez v. State , 2011 Ark. 536, 2011 WL 6275689. Even if otherwise inadmissible, when a party invites discussion of a certain subject, he or she opens the door to a line of questioning by the opposing party so that the opposing party may "fight fire with fire." Wilburn v. State , 289 Ark. 224, 229, 711 S.W.2d 760, 762 (1986) (quoting Pursley v. Price , 283 Ark. 33, 670 S.W.2d 448 (1984) ). We have long held that the circuit court has wide latitude in governing cross-examination and conclude that these adverse rulings were within the court's discretion and are not meritorious points to argue on appeal.
The test for filing a no-merit brief is not whether there is any reversible error but whether an appeal would be wholly frivolous. House v. State , 2015 Ark. App. 280, 2015 WL 1954057. After thoroughly reviewing the entire record and counsel's brief, we find that there has been compliance with Rule 4-3(k)(1) ; there are no nonfrivolous issues that support an appeal in this case, and this appeal has no merit. Furthermore, we also conclude that there is no merit to Leaks's pro se points in that they are either not preserved for appeal or do not support reversal. Consequently, *771 we grant Leaks's counsel's motion to be relieved and affirm the conviction.
Affirmed; motion to withdraw granted.
Virden and Hixson, JJ., agree.

The Arkansas State Crime Laboratory later analyzed the pills, and they were determined to be methamphetamine.